UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00187-MOC
(3:14-cr-00229-MOC-DCK-6)

| | |
|---|---|
| MALCOLM JARREL HARTLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.    BACKGROUND**

Petitioner Malcolm Jarrel Hartley ("Petitioner") a/k/a "Silent" or "Bloody Silent" was or is a member of the Charlotte-area Valentine Blood set of the United Blood Nation, an East Coast off-shoot of the California-based criminal street gang known as the "Bloods." [CR Doc. 510 at ¶¶ 1, 12]. On October 23, 2014, Petitioner executed Douglas and Deborah London at point blank range in their own home in Clover, South Carolina. [Id. at ¶ 35]. Petitioner was accompanied to the London's home with his co-conspirator Briana Johnson. [Id. at ¶ 35]. Petitioner, along with numerous co-conspirator gang members, had carefully planned these murders after a failed gang robbery at the London's mattress store months before by fellow gang member Jamell Cureton. In

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00187-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:14-cr-00229-MOC-DCK-6.

the course of that attempted robbery, Douglas London shot Cureton in the abdomen with London's own revolver. Cureton was caught when he sought medical care for his gunshot wound. [See id. at ¶¶ 13-33]. From jail, Cureton ordered the murder of the Londons to stop them from testifying against Cureton. After murdering the Londons, Petitioner and Johnson travelled back to Charlotte, North Carolina, where they disposed of evidence, and met up with the other co-conspirators to celebrate the murders. Petitioner ultimately "ranked up" in gang status for murdering the Londons. [Id. at ¶ 36].

Petitioner was indicted by a grand jury and charged with one count of RICO conspiracy,18 U.S.C. § 1962(d) (Count One); two counts of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1) and (2) (Counts Seven and Nine); two counts of the use or carry of a firearm in furtherance of a crime of violence and possession of a firearm in furtherance of a crime of violence resulting in death, that is, RICO conspiracy set forth in Count One and murder in aid of racketeering set forth in Counts Seven and Nine, all in violation 18 U.S.C. §§ 924(c) and 924(j)(1) (Counts Eight and Ten); and two counts of being a felon-in-possession of a firearm, 18 U.S.C. § 922(g)(1) (Counts Eleven and Twelve). [CR Doc. 477: Third Superseding Bill of Indictment].

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Counts One, Seven, Eight, Nine and Ten. [CR Doc. 509: Plea Agreement]. The plea agreement was predicated on the decision of the Attorney General to not seek the death penalty against Petitioner for his participation in the murders of the Londons. [Id. at ¶ 4]. The plea agreement was also predicated on the entry of a guilty plea by Cureton to the ten counts against him. [Id. at ¶ 7]. The plea agreement provided, in pertinent part:

> 6. If the Attorney General of the United States (or her designee) decides to seek the death penalty in this case against Jamell Lamon Cureton for the murders of Deborah and Douglas London, this Plea Agreement and the attached factual basis will be

2

> null and void, and neither document will be introduced or mentioned in any court proceeding or trial by either the federal government or the defense.
>
> 7.  This Plea Agreement is also predicated upon the entry of a plea of guilty by (1) Jamell Lamon Cureton to Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, and Ten as set forth in the Third Superseding Bill of Indictment. Should (1) Jamell Lamon Cureton choose to rescind his Plea Agreement and not plead guilty, this Plea Agreement and the attached factual basis will be null and void, and neither document will be introduced or mentioned in any court proceeding or trial by either the federal government or the defense.

[Id. at ¶¶ 6-7]. The plea agreement set forth the mandatory minimum and maximum sentences for each of the five counts to which Petitioner pleaded guilty, including the mandatory minimum sentence for Counts Seven and Nine of death or life imprisonment, 18 U.S.C. § 1959(a)(1). [Id. at ¶ 8]. The plea agreement also set forth the parties' agreement that Petitioner would be sentenced to a term of life imprisonment without the possibility of parole for all five Counts. [Id. at ¶ 10(b)]. In agreeing to the plea, Petitioner admitted that he had read and understood the factual basis and that the factual basis could be used to determine the advisory guideline range and sentence. [Id. at ¶ 17]. Finally, Petitioner agreed to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶¶ 21-22].

Petitioner pleaded guilty in accordance with his plea agreement. [CR Doc. 511: Acceptance and Entry of Guilty Plea]. At the Rule 11 hearing, the Government reviewed the terms of the plea agreement, including Paragraph 7, which predicated Petitioner's plea agreement on that of his co-conspirator, Jamell Cureton. [CR Doc. 600 at 11: Plea hearing tr.] The Government noted that at the time of Petitioner's Rule 11 hearing, the Court had already accepted Cureton's guilty plea. [Id.]. Petitioner stated that he understood and agreed to the terms of the plea

3

agreement. [CR Doc. 511 at ¶ 24]. Petitioner affirmed that he was guilty of all five counts of the indictment. [Id. at ¶ 22]. Petitioner testified that he had read, understood, and agreed with the factual basis. [Id. at ¶ 29]. Petitioner also testified that no one had threatened, intimidated, or forced him to plead guilty, and, other than the terms of his plea agreement, no one had made him any promises of leniency or a light sentence to induce him to plead guilty. [CR Doc. 600 at 15]. Petitioner testified that he was satisfied with his attorney's services. [Id. at 16]. Thereafter, the Court accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 17-18; CR Doc. 511 at 5].

Before Petitioner's sentencing, a probation officer prepared a Presentence Investigation Report (PSR). The probation officer noted the statutorily mandated sentences on each Count, which exceeded the recommended guidelines range of 360 months to life based on a Total Offense Level of 42 and a Criminal History Category of I. [CR Doc. 558 at ¶¶ 100, 106, 126-27: PSR]. At the sentencing hearing, Petitioner affirmed the answers he gave at the Rule 11 hearing. [CR Doc. 601 at 3: Sentencing Tr.]. Thereafter, the Court adopted the magistrate judge's findings that Petitioner's guilty plea was knowingly and voluntarily made. [Id.]. The Court then reviewed the recommended sentences, which for Counts One, Seven and Nine was life. The Court noted that the sentence for Counts Eight and Ten could have been death but for the plea agreement. [Id. at 6].

Petitioner's attorney then presented the Court with letters written by Petitioner's family and friends on Petitioner's behalf and requested that Petitioner's mother be allowed to address the Court. [Id. at 7-9]. After Petitioner's mother's testimony, Petitioner's attorney provided the Court with positive insight into Petitioner's background and personality and asked the Court to sentence Petitioner in accordance with the plea agreement, which required a term of life imprisonment on

4

all counts. [Id. at 10-12]. This Court sentenced Petitioner to a term of imprisonment of life on each of Counts One, Seven, and Nine, to run concurrently, and a term of imprisonment of life as to each of Counts Eight and Ten, to run consecutively to each other and all other Counts. [CR Doc. 580 at 2: Judgment]. Judgment on Petitioner's conviction was entered on May 5, 2017. [Id.]. The Fourth Circuit Court of Appeals dismissed Petitioner's appeal based on Petitioner's knowing and voluntary appellate waiver in his plea agreement. [CR Doc. 870]. The Supreme Court denied Petitioner's petition for writ of certiorari on March 18, 2019. Hartley v. United States, 139 S. Ct. 1359 (2019). Petitioner timely filed the present motion to vacate under § 2255. [CV Doc. 1].

Petitioner argues four grounds for relief. Petitioner claims he received in effective assistance of counsel because (1) his attorney failed to object to the joint nature of Petitioner's plea agreement, as Petitioner "had [his] co-defendant's life in [his] hands based on [Petitioner] signing [his] plea or not;" (2) Petitioner's plea agreement was "excessive and unfair;" and (3) his attorney failed to raise objections or present any mitigating factors at sentencing. [CV Doc. 1 at 4, 14-16]. Petitioner also claims he is entitled to relief under United States v. Davis, 139 S. Ct. 2319 (2019) because "conspiracy is no longer a crime of violence." [Id. at 5, 17].

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

5

## A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a

properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).  Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error.  Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)).  If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### 1. Plea Agreement.

Petitioner claims that his counsel was ineffective because he did not object to the joint nature of Petitioner's plea agreement and because Petitioner's plea agreement "excessive and unfair." Plaintiff asserts that he "was coerced into signing a plea [he] would not have willingly signed" because it was tied to Cureton's plea agreement. [CV Doc. 1 at 15]. Petitioner also alleges that he was sentenced to five life sentences without going to trial, where his attorney told him he would only receive "one life sentence."[2] [Id. at 16]. Petitioner argues that only the Government benefited from his plea agreement. [Id.].

These claims are without merit. Here, Petitioner was fully advised of the way his plea agreement was tied to that of his co-conspirator, Cureton. Petitioner reviewed the agreement with his attorney before his Rule 11 hearing. The Government the reviewed the terms of the plea agreement at the hearing, including the terms of Paragraph 7. Petitioner testified that no one had threatened, intimidated, or forced him to plead guilty and that he was satisfied with the services of his attorney. The Court found that Petitioner's guilty plea was knowingly and voluntarily made.

Petitioner's testimony at the plea hearing, therefore, contradicts any argument that his counsel was ineffective for not objecting to a term on which the plea agreement was based, a plea agreement that negated the possibility of a death sentence for Petitioner. Petitioner's own sworn testimony contradicts his current assertion that he pleaded guilty because he was coerced into doing so. See Lamaster, 403 F.3d at 221-22. Further, any objection to that term of the plea agreement would have necessarily undermined the agreement, which required a term of life imprisonment on all counts, and put a death sentence back on the table.

---

[2] Petitioner's characterization of his sentence is not entirely accurate. As noted, Petitioner received life sentences on all five Counts, but the terms on Counts One, Seven, and Nine are to be served concurrently, while the terms on Counts Eight and Ten are to run consecutively to each other and to all other terms.

8

Plaintiff's assertion that his plea agreement was "excessive and unfair" because only the Government benefitted from the agreement similarly fails. Petitioner's guilty plea, which was knowingly and voluntarily made, represented "a voluntary and intelligent choice among the alternative courses of action open to the [Petitioner]." Burket, 208 F.3d at 190. Petitioner has waived collateral review of allegations of ineffective assistance of counsel that do not affect the voluntariness of his plea. See Fields, 956 F.2d at 1294-96. In any event, Petitioner's claim here is simply one of buyer's remorse. Petitioner, of course, plainly benefitted from the agreement. Had Petitioner proceeded to trial, he would have faced the possibility of death sentences on Counts Seven and Nine.

Accordingly, as to Petitioner's claims of ineffective assistance on these grounds, Petitioner has failed to show deficient performance by his attorney. Furthermore, Petitioner has not and cannot show that the Government would have agreed to different terms nor that the Court would have accepted them. Finally, Petitioner has not shown there was an objectively reasonable probability for him to have proceeded to trial but for his counsel's alleged errors.

In sum, Petitioner has failed to show deficient performance and prejudice as to his claims of ineffective assistance of counsel relative to Petitioner's plea agreement.

### 2. Sentencing.

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner argues that he received ineffective assistance of counsel at sentencing because his attorney failed to argue mitigating factors, such as Petitioner's lack of criminal history, only one prior felony, mental health

9

problems, and his co-defendants' "substantially lower sentencing" compared to Petitioner's sentence.

Petitioner's argument similarly fails on this issue. He has not shown deficient performance by his attorney at sentencing. First, although Petitioner vaguely claims his attorney should have objected at the sentencing hearing, he provides no basis for any such objection. Second, as to Petitioner's claim regarding mitigating factors, Petitioner has also failed to show how the cited factors could or would have changed his sentence in any way. The plea agreement to which Petitioner explicitly agreed required the sentence that was imposed. Furthermore, Petitioner's attorney took significant time to describe Petitioner's positive qualities to the Court, provided letters to the Court from Petitioner's friends and family members written on Petitioner's behalf, and presented the testimony of Petitioner's mother in support of Petitioner. In short, Petitioner's attorney performed as well as possible under the very unfortunate circumstances of Petitioner's case.

In sum, this claim should be denied for Petitioner's failure to show that his counsel's performance was deficient or that Petitioner was prejudiced by counsel's conduct at sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

Therefore, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed.

### B. The Davis Claim

Under 28 U.S.C. § 2255, a petitioner is entitled to relief when his original sentence "was imposed in violation of the Constitution or laws of the United States, or [when] the court was without jurisdiction to impose such sentence." 28 U.S.C. § 2255(a). Petitioner claims his convictions on Counts Eight and Ten under § 924(c) are unconstitutional because "conspiracy is

10

Case 3:14-cr-00229-MOC-DCK   Document 927   Filed 06/15/20   Page 10 of 12

no longer a crime of violence." [CV Doc. 1 at 17].

Section 924(c) criminalizes the use of a firearm in furtherance of a "crime of violence." Under § 924(c), a crime is one of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another," (the "force clause") or "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(B).

In <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), the Supreme Court specifically held the residual clause of § 924(c)'s definition of "crime of violence" is "unconstitutionally vague." 139 S. Ct. at 2336. Petitioner claims his § 924(c) convictions are invalid because conspiracy, presumably RICO conspiracy, is no longer a crime of violence. Petitioner's argument is meritless. Petitioner ignores that his § 924(c) convictions were predicated on both RICO conspiracy <u>and</u> murder in aid of racketeering. While RICO conspiracy is not a crime of violence for § 924(c) purposes, <u>Sandoval v. United States</u>, 430 F.Supp.3d 71, 73 (W.D.N.C. Dec. 31, 2019), murder in aid of racketeering remains a crime a violence. <u>Umana v. United States</u>, 229 F.Supp.3d 388 (W.D.N.C. Jan. 25, 2017).

As such, Petitioner's convictions under 18 U.S.C. § 924(c) are valid and Plaintiff is not entitled to relief under <u>Davis</u>.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: June 13, 2020

Max O. Cogburn Jr.
United States District Judge